FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
                                              :    Chapter 7
In re:                                        :
                                              :    Case No. 07-35107 (cgm)
        Sandra Marciano,                      :
                                              :
                                   Debtor.    :
                                              :
---------------------------------------------------------------X

**MEMORANDUM DECISION DENYING TRUSTEE'S MOTION
TO TURN OVER PROPERTY PURSUANT TO 11 U.S.C § 542**

**A P P E A R A N C E S :**

Thomas Genova
1136 Route 9
Wappingers Falls, New York
*Chapter 7 Trustee*

Simon Haysom
One Railroad Avenue
PO Box 487
Goshen, New York
*Attorney for Debtor*

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

   This Chapter 7 dispute raises the question of what portion of an income tax refund filed jointly between a debtor and a non-debtor spouse must be turned over to the Chapter 7 Trustee ("Trustee") as property of the debtor's bankruptcy estate pursuant to 11 U.S.C. §541. In this case, the Trustee demands turnover of the entire joint tax refund pursuant to 11 U.S.C. §542 because the debtor's income represented substantially all of the income listed on the refund. The Debtor has already turned over half of the 2006 joint tax refund and argues that the Trustee is not

entitled to the other portion as a matter of law. The question of what may be considered property of the bankruptcy estate requires the Court to examine the criteria that should be used in apportioning ownership of a joint income tax refund. The Court employs a "50/50 Refund Rule" (discussed below), allocating ownership evenly between the spouses, and under the circumstances in this case, the Trustee's motion to compel turnover of the entire joint income tax refund is denied.

## Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. §157(a) and the Standing Order of Reference signed by Acting Chief Judge Robert J. Ward dated July 10, 1984. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(E) (orders to turn over property of the estate).

## Background

Sandra Marciano (the "Debtor") filed a petition for Chapter 7 relief under the Bankruptcy Code on January 25, 2007. In 2006, prior to initiating this bankruptcy proceeding, the Debtor filed her income tax return jointly with her husband (the "Non-Debtor Spouse"), who is not a party to this bankruptcy proceeding. The Debtor and Non-Debtor Spouse received a 2006 joint tax refund in the total amount of $7,672 (the "Refund"). Upon examining the Debtor pursuant to 11 U.S.C. §341, the Trustee sent a letter requesting turnover to the bankruptcy estate of approximately half of the Refund ($3,836 plus $195 from a non-exempt bank account). The Debtor delivered one half of the Refund in response to the Trustee's demand letter. Apparently before receiving the check, the Trustee filed a motion pursuant to 11 U.S.C. § 542,[1] demanding

---

[1] The Trustee's motion was made pursuant to 11 U.S.C. §§ 521(3), 521(4), and 542(e). Presumably the Trustee was referring to 11 U.S.C. §§ 521(a)(3) and 521(a)(4), which mandate cooperation with the Trustee and surrender of property to the estate, respectively. Section 542(e) refers to the turnover of information and does not

- 2 -

turnover of the entire Refund (ECF Docket No. 9; hereafter, the "Motion").  In support of this motion, Trustee submitted a memorandum of law (ECF Docket No. 22; hereafter, the "Trustee's Memo").  Roughly a month later,[2] Debtor's counsel filed opposition (ECF Docket No. 20; hereafter, the "Opposition") to the Motion to the extent that it sought turnover of the balance of the Refund.[3]  Debtor's counsel also submitted a memorandum in support of the opposition (ECF Docket No. 24; hereafter, the "Debtor's Memo").

The Trustee maintains that the bankruptcy estate is entitled to the entire Refund because the Debtor's income represented "substantially all of the joint income set forth on the 2006 tax return, (99%) and the debtor's withholding represents substantially all of the joint tax paid (99%)."  Trustee's Memo, ¶5.  In a footnote, the Trustee claims that "[t]he W-2's attached to the joint tax return for 2006 shows $8,213.00 in tax withholdings with the debtor paying $8,153.47 and the non-filing spouse having the sum of $7.00 withheld from his wages." Trustee's Memo, p. 3 n. 1.  Debtor's counsel responds:

> Exemptions such as for family size (4 here), residential mortgage deductions ($2,960.00 here), business deductions ($4,750 here) also play a significant part [in calculating income tax refunds] and teasing these various factors apart is not feasible. Nor is it equitable to do so for a husband and wife team, when one spouse might devote more time to managing the household for example, so as to allow the other spouse to focus on money making.

---

appear to be applicable here.  The Trustee seems to have intended to refer to 11 U.S.C. §542(a), the Code section that supports the instant demand for turnover of property.

[2]    Debtor's counsel filed the Opposition on May 14, 2007, six days after the scheduled hearing.  Debtor's counsel did not oppose the Motion earlier because he assumed that the Motion was a demand for one half of the joint tax refund, and that the check (mailed on April 13, 2007) and Motion (dated April 12, 2007) had "crossed in the mail." Opposition, ¶ 3.

[3]    The Debtor has never disputed the Trustee's claim of entitlement to $195 from the non-exempt bank account.

Debtor's Memo, p. 4.  According to Schedule I, filed with the Debtor's petition, the Non-Debtor Spouse currently earns approximately 30% of the total household income "from operation of business or profession or farm." [4]

## Discussion

In relevant part, Section 542(a) of the Bankruptcy Code requires "an entity … in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title" to "deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate."  The obligation to turn over non-exempt portions of an income tax refund to a trustee in a bankruptcy proceeding is governed by 11 U.S.C. §541 and turns on whether the refund constitutes an asset of the debtor's estate. *See In re Barrow*, 306 B.R. 28, 30 (Bankr. W.D.N.Y. 2004).  Section 541(a)(1) of the Bankruptcy Code defines property of the bankruptcy estate broadly as "all legal or equitable interests of the debtor in property as of the commencement of the case."  Before requiring the Debtor to relinquish the remaining portion of the Refund, the Court must establish the boundaries of the bankruptcy estate.

Demarcating the bankruptcy estate becomes difficult where, as here, the tax refund in question results from a tax return filed jointly with a non-debtor spouse.  Whether the Debtor herself has a "legal or equitable interest" in the remaining portion of the Refund such that it becomes "property of the estate" under 11 U.S.C. § 541 must be determined by applicable state law. *Musso v. Ostashko*, 468 F.3d 99, 105 (2d. Cir. 2006) (citing *Butner v. United States*, 440 U.S. 48, 54 (1979)).  To that end, an assessment must first be made as to which body of state law applies.  Bankruptcy courts range broadly on the subject of how to make this determination.

---

[4]    The Non-Debtor Spouse's income on Schedule I is $2,398 per month, and the monthly total for the household is $6,087.39.

- 4 -

The majority view allocates a joint tax refund between spouses in proportion to their tax withholdings (the "50/50 Withholding Rule"), relying on state property law. *See, e.g., In re Kleinfeldt,* 287 B.R. 291 (B.A.P. 10th Cir. 2002). A second approach divides the refund in proportion to the income that each spouse generated (the "Proportional Income Rule"), also basing the analysis on state property law. *See, e.g., In re Levine,* 50 B.R. 587 (Bankr. S.D. Fla. 1985). Still other courts have ruled that each spouse owns the refund equally, so that the refund should be allocated evenly between them (the "50/50 Refund Rule"), following the concept of marital property from state matrimonial law. *See, e.g., In re Aldrich,* 250 B.R. 907 (Bankr. W.D. Tenn. 2000).

The Bankruptcy Court for the Western District of New York has adopted the 50/50 Refund Rule and applied a rebuttable presumption of equal ownership to any joint tax refund. *In re Barrow*, 306 B.R. 28 at 31. The presumption of equal ownership in the 50/50 Refund Rule may be rebutted by a demonstration that the couple's "present conduct or history of financial management" suggests separate financial affairs. *Id.* Bankruptcy courts following the 50/50 Refund Rule have applied state matrimonial law, in some cases borrowing the rationale followed by matrimonial courts in dividing property in a divorce proceeding. *In re Aldrich,* 250 B.R. at 911. Here, the applicable state law is New York's Domestic Relations Law ("DRL") §236, which states in relevant part:

> c. The term "marital property" shall mean all property acquired by either or both spouses during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action, regardless of the form in which title is held, except as otherwise provided in agreement pursuant to subdivision three of this part. Marital property shall not include separate property as hereinafter defined.
>
> d. The term separate property shall mean:
>
> (1) property acquired before marriage or property acquired by bequest, devise, or descent, or gift from a party other than the spouse;

- 5 -

  (2) compensation for personal injuries;

  (3) property acquired in exchange for or the increase in value of separate property, except to the extent that such appreciation is due in part to the contributions or efforts of the other spouse;

  (4) property described as separate property by written agreement of the parties pursuant to subdivision three of this part.

  Courts that follow either the 50/50 Withholding Rule or the Proportional Income Rule have been dismissive of drawing a corollary with state matrimonial law, reasoning that "it is property law, not domestic relations law, that is applicable for purposes of § 541(a)." *In re Lock*, 329 B.R. 856, 859 (Bankr. S.D. Ill. 2005). While the Court understands the purpose and difference of these two bodies of law, in New York State there appears to be no other property law that offers more helpful guidance in apportioning each spouse's property interest. DRL §236 at least offers an illustrative definition that provides a useful device for apportioning ownership.

  Further, the Second Circuit used DRL §236 in its calculation of ownership rights regarding marital property in *Musso v Ostashko, supra*. There, the Second Circuit held that marital assets awarded to the non-debtor spouse in a pre-petition state court matrimonial proceeding are nonetheless part of the debtor spouse's bankruptcy estate where the Chapter 7 petition was filed prior to entry of the state court judgment. *Musso*, 468 F.3d 99 at 102. The Second Circuit relied on DRL §236 in reaching this conclusion, reasoning that all property obtained by both debtor-husband and non-debtor wife during their marriage was marital property under New York law, and was available for distribution by a New York court in a final judgment of divorce. *Musso*, 468 F.3d 99 at 105. In this analysis, the Second Circuit looked to the Practice Commentaries, which conceive of "marriage as an economic partnership and that, upon dissolution of the marriage, the tangible fruit of that partnership, the marital property, should be equitably divided between the parties." *Id.* (citing N.Y. Dom. Rel. L. Practice Commentaries,

C236B:4, 253 (2003)). Although the non-debtor spouse was awarded a state court judgment, her interest had not completely vested so that the property subject to the judgment was property of her husband's bankruptcy estate. *Musso*, 468 F.3d 99 at 108.

Though *Musso* dealt with a different factual and legal scenario, its reasoning informs the Court's decision here. *Musso* applied DRL § 236 to a bankruptcy question concerning the scope of property of the estate based upon the theory behind the statute, that marriage is an economic partnership. 468 F.3d at 105. The theory behind DRL § 236 is most often applied to the equitable distribution of property upon the dissolution of the marriage, but the rationale behind the theory is equally relevant to the allocation of marital property between a debtor in bankruptcy and a non-filing spouse where the marriage is still an active partnership. Thus, the property that the Marcianos accrue over the course of that partnership is owned jointly as marital property. This does not mean that each spouse has an equal ownership interest in such marital property; rather, that ownership is allocated between the two spouses. *Musso*, 468 at 105.

*Musso* illustrates the usefulness of DRL § 236 for determining what constitutes property of the bankruptcy estate with regard to the issue before this Court as well as many other bankruptcy issues that may arise as between the debtor and non-debtor spouse. For example, another bankruptcy court in this District recently relied on *Musso* and DRL §236 in concluding that the automatic stay applied to a state foreclosure action where the property in question was titled solely in the name of the non-debtor spouse. *In re Levenstein* 2007 WL 1597852, *3 (Bankr. S.D.N.Y. June 4, 2007). *In re Levenstein* recognized that under the principle of equitable distribution in DRL § 236, the debtor had a marital interest in property (and therefore an interest that constituted property of the bankruptcy estate protected by the automatic stay), even though that property was titled in the name of the non-debtor spouse. 2007 WL 1597852 at

- 7 -

*3. In the case at bar, under the economic partnership theory, the Non-Debtor Spouse's interest in the Refund is determined under DRL § 236, regardless of the fact that the Debtor's income constituted the bulk of earned income listed on the joint tax return.

Upon review of the three different standards, and considering the fairness of each rule to (1) the debtor, (2) the non-filing spouse, (3) the creditors, and (4) the estate, adopting the a presumption of equal ownership of a joint tax refund as between a debtor and non-debtor spouse is the most equitable outcome. In a continuing marital relationship, it is a fair presumption that the proceeds of the tax return would be shared equally as a joint venture. Bankruptcy Judge Carl L. Bucki adopted the 50/50 Refund Rule because "as a general rule, the refund on a joint tax return is a joint asset that spouses own 'in equal shares'…. Under the current tax code, we simply cannot assume that any refund represents income for one spouse or the other." *In re Barrow*, 306 B.R. 28, 31 (Bankr. W.D.N.Y. 2004) (quoting and following *In re Hejmowski*, 296 B.R. 645, 650 (Bankr. W.D.N.Y. 2003)). This Court now adopts the 50/50 Refund Rule as a rebuttable presumption that an income tax refund should be split equally between spouses for purposes of allocating property of the estate pursuant to 11 U.S.C. § 541.

*In re Gleason*, 193 B.R. 387, 389 (Bankr. D. N.H. 1996), a case cited by the Trustee, rejected the 50/50 Refund Rule because, "it seems incongruous at best to find that the non-debtor spouse is entitled to a cash refund having paid no taxes." An income tax refund is not a refund in the colloquial sense. *See In re Hejmowski*, 296 B.R. at 647 ("An income tax 'refund' is no more a 'refund' of dollars paid than is a 'refund' of credit balance from a credit card account. It simply is not a refund."); *In re Barrow*, 306 B.R. at 30 ("It is simply inaccurate to say that [a] refund is attributable only to the income and withholdings of the employed spouse."). The presumption of equal ownership contained in the 50/50 Refund Rule is not a simple division.

- 8 -

Allocation of a joint tax refund must be predicated upon considerations of exemptions, deductions, and other intangible factors traceable to the spouse whose income is not listed on the tax return. The line between income and return was not directly proportional in the case of the Marcianos' filing. As noted above, on their joint return the Marcianos deducted $2,960 for their residential mortgage and $4,750 for a business operated by the Non-Debtor Spouse.

Because the Marcianos' actual practice and pattern of financial management is joint in nature, the facts in this case do not warrant a rebuttal of the presumption of equal ownership. *See In re Barrow*, 306 B.R. 28 at 31 ("In contested situations, the issue is whether by their present conduct or history of financial management, the taxpayers have demonstrated a basis for separate ownership."). In *In re Barrow*, the bankruptcy court characterized a couple's history of financial management as joint after looking to multiple determinative factors first examined in *In re Hejmowski*:

- Whether the monthly bills of the debtors' are paid out of joint accounts;
- Whether the debtor considers the responsibility for paying the household bills to be a joint responsibility;
- Whether the accounts of the debtor and non-debtor spouse have always been held jointly;
- Whether the debtor and non-debtor spouse have ever held individual accounts at any point during the marriage;
- Whether both husband and wife have equal access to funds in accounts;
- Whether their joint tax refunds have always been deposited into joint checking accounts with both debtors having full access to the funds; and
- The purpose or use to which the tax refunds have traditionally been applied (e.g., for household expenses or educational expenses for their children).

306 B.R. at 31; *see also In re Hejmowski*, 296 B.R. at 650.

At the July 17, 2007 hearing on this matter, the Court requested additional information from the Debtor that would address the factors set forth in *Hejmowski*. In response, the Debtor submitted an affidavit dated July 24, 2007 (ECF Docket No., 28; hereafter, the "Affidavit"),

which is satisfactory to the Court.  The Affidavit confirms that the Marcianos have managed their household expenses out of a joint checking account since the commencement of their marriage. Affidavit, ¶1.  The bulk of their individual earnings goes into the joint account and goes toward providing for all of their domestic expenses, including expenses for their two children. *Id.*, ¶8.  The remaining portion of the Refund was also deposited in the joint account. *Id.*, ¶7.  Once in the joint account, the Debtor estimates that the remainder was used to pay for heating oil, a bill from their accountant, and groceries. *Id.*, ¶6.  Each has equal access to the account and the primary mortgage is paid from it. *Id.*, ¶ 2, 5.  The Non-Debtor Spouse holds a separate checking account that he uses exclusively for business purposes. *Id.*, ¶1.

The few deviations from the overall pattern of joint financial management do not overcome the presumption of the 50/50 Refund Rule.  The Non-Debtor Spouse recently made repairs to a "horse barn" and purchased "a horse for his business." Affidavit, ¶ 2.  This horse barn is presumably located on the Marcianos' jointly owned property.  The barn's location suggests that the business itself – including the home equity loan, the repairs to the horse barn and purchase of a horse – is the result of an agreement between the Marcianos and as such, represents a joint venture operated by the Non-Debtor Spouse.  The home equity loan that the Marcianos took out was used in part to finance the repairs to the horse barn and to purchase the horse mentioned above. *Id.*, ¶2.  The Debtor states in her affidavit that because the home equity loan went in part toward financing the Non-Debtor Spouse's business, the payments for that loan would be made from the Non-Debtor Spouse's business account. Affidavit, ¶ 2.  The Debtor also opened a separate checking account that she established "for a rainy day," but the account was closed by the bank in November 2006 for lack of funds. *Id.*, ¶3.  This "rainy day" account is negligible, and carries little weight in the analysis.  Overall, the Affidavit reveals a pattern of

- 10 -

joint financial management of household affairs, including the care of the two children that the Marcianos have together.  The mere existence of a separate business account, from which the Non-Debtor Spouse repays home equity loan payments, does not outweigh the pattern of joint financial management that debtor has demonstrated.

## **Conclusion**

For the foregoing reasons, the Trustee's Motion is denied to the extent that it seeks turnover of more than 50% of the Refund.  The Court will issue a separate order consistent with this decision.

Dated: Poughkeepsie, New York
      August 2, 2007                  /s/ Cecelia Morris
                                      CECELIA G. MORRIS
                                      UNITED STATES BANKRUPTCY JUDGE